UNITED STATES, Appellee

v

BOBBY LEE GREENE, Specialist Four, U. S. Army, Appellant

21 USCMA 543, 45 CMR 317

No. 25,100

July 28, 1972

*Captain Joseph J. Aronica* argued the cause for Appellant, Accused. With him on the brief were *Colonel George J. McCartin, Jr., Colonel Arnold I. Melnick, Lieutenant Colonel Joseph E. Donahue, Captain John D. Lanoue,* and *Captain Peter D. Pettler.*

*Captain Robert C. Roth, Jr.,* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway, Captain Richard L. Menson,* and *Captain Walter A. Smith, III.*

## Opinion of the Court

DARDEN, Chief Judge:

We granted accused's petition for review to consider whether the military judge erred prejudicially in refusing to permit cross-examination of certain witnesses on their identification of him as one of the perpetrators of the offenses charged.

During the evening hours of September 17, 1970, Privates John Twist and Lester J. Taylor, and Private First Class John Waesche were robbed by another group of soldiers, soon after they left the Timmerman Theater at Fort Dix, New Jersey.

Promptly after the incident, a lineup was held at which the victims identified the accused as one of their assailants. At the trial, the Government conceded that the identification parade did not meet the requirements of United States v Wade, 388 US 218, 18 L Ed 2d 1149, 87 S Ct 1926 (1967), but, over defense objection, insisted that the victims' in-court identifications of the accused were admissible as being independently founded.

The military judge ruled that the in-court identifications were admissible but, after they were received, refused to permit the defense counsel to cross-examine the witnesses as to the circumstances under which the lineup was conducted. He reasoned that, as the evidence of the pretrial lineups had been excluded under *Wade,* supra, on motion of the defense, the defense had no right to pursue the subject on cross-examination.

Whether or not the Government was correct in conceding at the trial that the lineup procedures were erroneous, compare United States v Wade, su-

**544**

pra, with Kirby v Illinois, — US —, 32 L Ed 2d 411, 92 S Ct — (1972), the accused was entitled to cross-examine the witnesses who identified him as to the effect of the pretrial confrontations on their ability to name him as their assailant. An accused has the right to develop all factors that tend to influence the credibility of a witness's testimony. Alford v United States, 282 US 687, 75 L Ed 624, 51 S Ct 218 (1931). The military judge erred in curtailing the accused's examination into the pretrial lineups.

Moreover, the error was prejudicial. Accused's connection with the crimes charged was shown only by the witnesses' in-court identifications. Discrediting those identifications was crucial to his case. Compare United States v Ketchem, 420 F2d 901 (CA 4th Cir) (1969). The dangers inherent in eyewitness identifications and pretrial lineups have been well documented. United States v Wade, supra, at page 228. The refusal to permit the identifications to be tested by appropriate cross-examination seems error of at least the same gravity as that involved in Smith v Illinois, 390 US 129, 19 L Ed 2d 956, 88 S Ct 748 (1968), in which denial of cross-examination as to a witness's real name was held prejudicial. The military judge's rulings effectively prevented the defense from inquiring into the basis of the witnesses' identifications.

It is suggested that no prejudice inured to the accused in this case, as the military judge received an offer of proof— from the defense counsel concerning what his cross-examination would bring forth and accepted such representations as true in reaching his findings. We reach a contrary conclusion from the record, for, as we interpret the military judge's rulings, he was of the opinion that evidence of the conditions under which the pretrial lineup was conducted could not, in view of its illegality, be considered for any purpose. In consequence, and consistent with his former ruling as to cross-examination, he declined to consider the conditions under which it was held in connection with his findings.

The decision of the Court of Military Review is reversed and the record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

Judge DUNCAN concurs.

QUINN, Judge (dissenting) :

Three witnesses, Twist, Taylor and Waesche, testified for the Government. From their testimony, it appears that they had attended a movie at a theater on post. After the movie, they attempted to get a taxi to return to their barracks. They were approached by a group of six to ten soldiers. The accused was one of the group. Speaking directly to Twist, the accused asked "for 30 cents for" a cab. Twist replied that he "did not have it," and he and his companions proceeded to walk toward a cab. The accused "put his hand" on Twist's shoulder, and the others in his group formed "around . . . in a semi-circle." Twist, Taylor and Waesche continued to walk down the street; the accused's group followed behind them. When they had gone about 30 paces, Twist turned and indicated to the accused that he was willing to give him the 30 cents. One of the accused's group called out that they were "not after your 30 cents."

Taylor was "grabbed from behind, [and] struck down." Someone "kept trying to get . . . [his] wallet out of . . . [his] pocket," and "eventually" Taylor surrendered the wallet, which contained $90.00. Twist saw Taylor on the ground and tried to go to his assistance, but three or four of the accused's group "stopped . . . and knocked . . . [him] down," and "somebody" proceeded to hit him "with a board." The person beating him tried to take his watch. Waesche was struck several times. While he was engaged in defending himself, someone tried "to get . . . [his] wallet" from his back pocket. Some-

**545**

one "yelled out that a MP was coming, and everybody left."

Twist testified that the accused was "close to the street light . . . above us" and he "stuck in . . . [his] mind." He described the accused's attire. When the attackers had fled and he was "in the MP car" en route to the hospital, he "gave a description of the defendant," who "was the only one . . . [he] recognized." After he left the hospital, where he had received treatment for his injuries, which included a cut over his right eye that required five stitches to close, Taylor went to the MP station. There he observed the accused in a lineup. He admitted that his in-court identification was "reinforced" by the lineup, but he maintained he would still have been able to identify the accused from the "incident," without having seen him in the lineup.

Taylor identified the accused as the person who approached Twist and asked for 30 cents. He testified that he had seen the accused "very clearly." He asserted that the accused "was the center of attention" because he had "initiated the attempt." He, too, insisted that he could identify the accused from his observation of him at the scene of the assault. Waesche also identified the accused as the "first man to physically" confront "them." He testified that his identification was based upon the fact he had "clearly observe[d]" the accused when he confronted Twist.

During cross-examination of Twist and Taylor, defense counsel attempted to inquire into the circumstances of the lineup identification, but each effort was cut short by the trial judge. At one point, the judge noted that "he was getting tired of this." He made clear that he would not allow defense counsel to inquire into the circumstances of the lineup unless he withdrew his objection to the lineup procedure.

At the end of the Government's case, defense counsel moved for a finding of not guilty. In denying the motion, the trial judge noted he had "found"

that the accused's identity as one of the participants of the group that had attacked Twist and his friends had been established "independently . . . from the lineup." Defense counsel protested the finding on the ground his motion for a finding of not guilty did not contemplate that the judge would also rule on the earlier motion to exclude the in-court identification. Counsel further contended that the judge's procedure had denied him the opportunity to link the influence of the lineup to the in-court identification by each of the three witnesses. He asked to be allowed to make an "offer of proof."

I agree with the majority that the trial judge erred in cutting off defense's inquiry into the circumstances of the lineup and the impact of the lineup on the witnesses who made in-court identification. I also acknowledge that since the issue dealt with relevant cross-examination of adverse witnesses, the trial judge could appropriately have directed reopening of the Government's case and recall of the witnesses for further examination. This course, however, was not the only way to cure the error. The matter involved a question of law, namely the admission of evidence as to identification. The case was being tried by the judge alone, and it had proceeded to the point where the Government had rested. Further, defense counsel had expressed his willingness to present the factual information he believed important to the issue in the form of an offer of proof. His argument clearly indicates that he conceived that method as sufficient to present the defense position. See United States v Taft, 21 USCMA 68, 44 CMR 122 (1971). In this situation, it was appropriate that the judge hear the specific facts upon which the defense rested its contention, rather than immediately reopen the prosecution's case. I conclude, therefore, that the accused was not deprived of the opportunity to challenge, in an appropriate way, the admissibility of the in-court identification.

546

As soon as defense counsel objected to the identification ruling, the trial judge acknowledged that counsel was "correct." He invited counsel to set forth his facts. What defense counsel presented did not detract, in any degree, from the testimony of the witnesses.

Defense counsel indicated that the parties were "lucky to have three witnesses like this," and he stressed that "the defense in no way is attacking the veracity of these witnesses." He conceded that their direct observation of the accused at the time of the offenses provided "an independent basis" for their in-court identification. He also conceded that the accused's physical stature was such that he "would naturally stand out in a crowd" and be "rather easy to identify." The only new factual matter he presented was that Taylor and Waesche had together viewed the accused in the lineup and that Twist had watched the accused for about "five minutes, if that long." He argued that probable "byplay" between Taylor and Waesche and "prolonged viewing" by Twist had undoubtedly reinforced their original identification of the accused to the "point where identification in court is absolutely impossible to rehabilitate because it cannot be possibly based on the viewing at the scene."

Ruling again on the objection to the in-court identification, the trial judge indicated that he accepted "all the matter" presented. He referred to the identification of the accused by each of the three witnesses on the basis of their individual view of the accused at the scene of the offenses. He alluded to the description of the accused that Twist gave to military police before he went to the hospital. Considering the shortness of the interval of time between the description and the accused's appearance at the lineup, he observed that it was "distinctly inferable" that Twist's description "caused the accused's apprehension." He concluded by adhering to his "earlier findings and ruling." In my opinion, the facts amply support the ruling. I would therefore, affirm the decision of the United States Army Court of Military Review.