UNITED STATES, Appellee,

v.

Antonio RIVAS, III, Corporal, U. S. Marine Corps, Appellant.

No. 31,138.

NCM 75–0552.

U. S. Court of Military Appeals.

Aug. 8, 1977.

Lieutenant *Michael C. Barr,* JAGC, USNR, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Gordon Stephen Wright,* JAGC, USNR.

*Captain Ronald J. Waicukauski,* USMCR, argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel P. N. Kress,* USMC, and *Captain W. David Blunk,* USMCR.

## Opinion of the Court

PERRY, Judge:

The appellant was tried by a military judge sitting alone as a general court-martial upon specifications of a charge laid under Article 92 of the Uniform Code of Military Justice, 10 U.S.C. § 892, alleging wrongful possession, sale, and transfer of three tablets of phencyclidine, a controlled substance. He was found not guilty of the sale, but guilty of the other two offenses. Thereupon, he was sentenced to a bad-conduct discharge, confinement at hard labor for one year, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. The convening authority reduced the amount of forfeitures to $200 per month for one year, but otherwise approved the findings and the sentence. Additionally, the convening authority suspended for a period of time that portion of the sentence adjudging a bad-conduct discharge, confinement at hard labor in excess of 6 months and forfeiture of $200 per month in excess of 6 months. The United States Navy Court of Military Review has affirmed.

The appellant contends before this Court, as he did before the Court of Military Review, that the military judge erred in failing to strike, sua sponte, the direct testimony of a prosecution rebuttal witness who had invoked his Fifth Amendment[1] privilege against self-incrimination during cross-examination. We hold that the judge did not err, but that defense counsel's failure to move for such remedy under the circumstances constituted ineffective assistance of counsel.

A review of the testimony offered at trial by each side relevant to the matters before us is necessary as a predicate to this opinion. The principal prosecution witness, Private First Class Michael Daniels (a confessed drug user turned CID informant) had known the appellant for about 3 months before the incident in question. Desiring to make a drug purchase from a fellow soldier named Martinez, and knowing that Martinez and the appellant were friends, Daniels approached the appellant about 7:00 on the morning of June 21, 1974, and asked the latter for some tetrahydrocannabinol (THC). The appellant responded that he had none, but that Martinez might have some. Daniels asked the appellant to talk to Martinez about selling Daniels some of his THC. After several unsuccessful attempts to reach Martinez throughout that workday, Daniels himself contacted Martinez in the barracks about 4:00 that afternoon. Martinez told Daniels that he had some THC but that it was in Bor's car. Shortly thereafter, while Martinez was in the shower, Bor arrived in the squad bay with some THC. According to Daniels, the appellant took three tablets from Bor's plastic bag, in Bor's presence, and gave them to Daniels in exchange for a $10 bill, returning $1.00 change to Daniels. Daniels testified that the $10 bill had been given him by a CID agent named Sanchez for the purpose of making a controlled buy. After

the transaction, Daniels said he left the barracks, contacted Sanchez, and gave the agent three tablets and the $1.00.

Agent Sanchez confirmed that Daniels had made a controlled buy on June 21 from the appellant in Bor's presence. He indicated that the appellant was not apprehended on these charges until a month later, so that Daniels could make additional buys on the installation. When the appellant finally was taken into custody, his person, wall locker, and possessions were searched, but neither the $10 bill nor any contraband was discovered.

For the defense, Staff Sergeant Huff, who had known Daniels for 8 months, during 4 of which he was Daniels' platoon sergeant, testified that, based on his day-to-day observation of Daniels, he considered Daniels both unreliable and unbelievable, even under oath.

The appellant testified prior to findings that at the time of the incident he was a tank commander in the 2d Platoon, Company B, 2d Tank Battalion, and, as such, he was responsible for the tank's maintenance, operation, and crew. The appellant stated that at 11:30 on the night of June 18, he put his tank on the maintenance ramp. He said that to the best of his recollection, his tank still was on the ramp on June 21 and that he and not more than one other member of the crew worked on it. He noted that whenever his tank was on the ramp, it was his duty as its commander to supervise its maintenance. His memory of June 21 was unclear, but he swore that if battalion maintenance was working on his tank, he would necessarily have been there working with them. He neither remembers being in the squad bay nor seeing Daniels on June 21. As explanation for his lack of certain memory, the appellant revealed that it was not until July 23 that he was made to realize that he would have to account for his whereabouts on June 21. He swore that he did not possess or transfer phencyclidine on June 21, though he does recall a conversation some time in late June with Daniels in which the latter had asked him for some

drugs, but the appellant had responded negatively.

Finally, the defense offered the testimony of two other witnesses—one live and the other by stipulation—in support of the appellant's alibi defense. Staff Sergeant Griffin (by stipulation) testified that he was the Heavy Section Leader of the 2d Platoon and that the appellant was the commander of one of the tanks in the platoon. He stated that after completion of an operation on June 18, most, if not all, of the tanks in the platoon went immediately into maintenance in the tank park. After confirming that when a tank is being worked on its commander must be present, and after noting that general maintenance on the tank without any major problems surfacing requires 4 days, he testified that he would have been notified on June 21 if the appellant had not been present on the tank ramp during working hours. However, he received no such notification. Gunnery Sergeant Roseboro confirmed that the appellant's tank was in the tank park for maintenance during the week in question; that the tank commander is required to be present until the crew is secured; and that repairs on the tank could not have been completed in 3 days without overtime. Finally, he testified that as he was leaving the tank park at 3:50 the afternoon of June 21, he saw the appellant there and, at that time, no one had secured from work. He judged that the barracks where the transaction was alleged to have occurred was about four miles from the ramp.

That, basically, was the state of the pertinent evidence at the close of the defense presentation. Obviously, at that point the case turned on a very close question of credibility. The prosecution then called as a rebuttal witness Lance Corporal Dennis Bor. On direct examination, Bor indicated that he was a crewman on the appellant's tank and that the crew did perform maintenance on the tank on June 21. However, Bor testified that the crew left the ramp between 4:00 and 4:30 and went immediately to the squad bay. He contended that Martinez was with him and while Martinez

took a shower, Daniels entered the squad bay and began a discussion with the appellant. Bor said that the appellant's first response to Daniels was " . . . I'll sell you some of my dope." Bor said that this conversation occurred between 4:30 and 4:40. He further revealed that he saw the appellant with a brown, plastic, transparent bottle which contained pills and that the appellant and Daniels then went into Martinez' cubicle. After this point, Bor claimed he saw nothing.

Bor's direct testimony in rebuttal did obvious damage to the appellant's cause. Except for differences apparently designed to exculpate himself, Bor's testimony corroborated the essential portion of the informant's (Daniels) testimony—thereby giving obvious weight advantage to the prosecution in the credibility balance of the other evidence.

In an effort to undermine Bor's impact, defense counsel sought to pierce this shroud of personal noninvolvement Bor had set up in his direct testimony. After a few introductory questions about when the crew had left the tank park, the defense counsel asked Bor the following questions, receiving the responses indicated:

Q. . . . Lance Corporal Bor, on the 21st of June 1974, did you bring anything into the squadbay when you walked into the squadbay?
A. Sir, I refuse to answer that on the grounds that it may incriminate myself.
Q. . . . On the 21st of June 1974, did you hand Corporal Rivas anything?
A. Sir, I refuse to answer that on the grounds that it may incriminate myself.

Thereafter, except for eliciting the fact that Bor had recently been convicted for possession, transfer, and sale of marihuana and was then serving the sentence therefor,

which he hoped would be shortened by his testimony against the appellant—but which hope was not a factor, he maintained, in his decision whether to testify—the cross-examination was essentially routine. No objection was made to Bor's refusal to answer and no motion was made by the defense counsel to strike Bor's testimony from the record as a remedy for his refusal to answer these important questions on cross-examination. We now proceed to consider the effect of these omissions by counsel.

I

As a general proposition, when a witness refuses to answer questions on cross-examination, "the opportunity of thus probing and testing his statements [made on direct examination] has substantially failed, and his direct testimony should be struck out." 5 Wigmore, Evidence § 1391 (Chadbourn rev. 1974) (footnote omitted). This is because the right to confront an adverse witness, found in the Sixth Amendment of the Constitution of the United States, includes the right to cross-examine that witness.[2] And as long as the subject matter of the cross-examination is germane to the direct examination or relates to the witness' credibility, cross-examination may extend to areas of self-incrimination.[3] Of course, the witness may properly decline to answer such questions, instead invoking his right[4] not to incriminate himself.[5] In such circumstance, the accused's usual remedy for this denial of his right to confront an adverse witness is to have that witness' direct testimony stricken from the record.[6]

We held in *United States v. Colon-Atienza*, 22 U.S.C.M.A. 399, 47 C.M.R. 336 (1973), that an accused so situated ought to be granted this remedy upon his motion therefor. Here, however, as noted, the defense counsel made no motions or objections

2. *In re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948); *United States v. Greene*, 21 U.S.C.M.A. 543, 45 C.M.R. 317 (1972); paragraph 149*b*(1), Manual for Courts-Martial, United States, 1969 (Revised edition).

3. *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931).

4. U.S.Const. amend. V.

5. 8 Wigmore, Evidence § 2252 (McNaughton rev. 1961).

6. For a discussion of whether and when the direct testimony ought to be stricken as a remedy for such a denial of cross-examination, *see* McCormick, Evidence § 19 (2d ed. 1972).

whatsoever when Bor refused to answer his questions on cross-examination. Therefore, the appellant urges that we find that the military judge had a duty to strike, sua sponte, the direct testimony in order to insure the basic fairness of the proceedings.

It is true, as this Court recently has observed,[7] that the military judge has an active role to fulfill in the trial forum in assuring to every accused there appearing a fair trial of the charges against him. In the proper exercise of those responsibilities, such as instructing the court members on the law to be applied to the case, he is more than the alter ego of the counsel, doing or not doing something at their wish. *See United States v. Grunden*, 3 M.J. 41 (1977). As Chief Judge Fletcher remarked, in writing for the Court in *United States v. Graves*, 23 U.S.C.M.A. 434, 437, 50 C.M.R. 393, 396, 1 M.J. 50, 53 (1975):

> Advocacy leaves the proceedings at the juncture of instructing the court members. Irrespective of the desires of counsel, the military judge must bear the primary responsibility for assuring that the jury properly is instructed on the elements of the offenses raised by the evidence as well as potential defenses and other questions of law. Simply stated, counsel do not frame issues for the jury; that is the duty of the military judge based upon his evaluation of the testimony related by the witnesses during the trial.

We have also applied this basic concept to evidentiary matters, determining that it is the trial judge who bears primary responsibility for insuring that only admissible evidence finds its way into the trial. *See United States v. Morales*, 23 U.S.C.M.A. 508, 50 C.M.R. 647, 1 M.J. 87 (1975); *United States v. Heflin*, 23 U.S.C.M.A. 505, 50 C.M.R. 644, 1 M.J. 131 (1975).

Here, however, there was nothing *inadmissible* about the direct testimony rendered by the witness Bor. As noted, any decision to strike his direct testimony would have been appropriate only as a procedural remedy for his refusal to answer questions on cross-examination; it would have had nothing to do with the qualitative admissibility of that testimony. Therefore, unlike the situations presented to this Court in *Graves* and the other previously cited cases, we believe it was not incumbent upon the military judge, in order to insure the basic fairness of the proceedings, to strike this otherwise admissible and competent direct testimony in the absence of a motion to that end made by the defense.[8]

## II

The question coming to mind naturally following this discussion is why did this defense counsel not move to have Bor's direct testimony stricken from the record? We have carefully scrutinized the record of trial and have been unable to discern any possible advantage which the defense counsel could reasonably have drawn from that direct testimony. True, he did argue to the court the inconsistencies between the testimony of Bor and of Daniels. However, those inconsistencies were inconsequential and were of the type argued only because nothing else *could* be done with that testimony, as opposed to being of the type a defense counsel would so relish arguing

---

7. *See United States v. Grunden*, 3 M.J. 41 (1977); *United States v. Shamberger*, 1 M.J. 377 (1976); *United States v. Heflin*, 23 U.S.C.M.A. 505, 50 C.M.R. 644, 1 M.J. 131 (1975); *United States v. Gaiter*, 23 U.S.C.M.A. 438, 50 C.M.R. 397, 1 M.J. 54 (1975); *United States v. Graves*, 23 U.S.C.M.A. 434, 50 C.M.R. 393, 1 M.J. 50 (1975); *United States v. Pinkney*, 22 U.S.C.M.A. 595, 48 C.M.R. 219 (1974).

8. Indeed, in some rare instances, it may even be to the perceived advantage of the defense to retain the direct testimony in the record even in

light of the denial of effective cross-examination in a certain area. While the wishes of counsel are not determinative where evidence is per se inadmissible or where the military judge has an independent and paramount obligation to guide the proceedings toward the end of justice, *see United States v. Grunden, supra*, we believe tactical decisions of the sort involved here properly are made by the party subject to be aggrieved.

that he intentionally for tactical reasons would *choose* to retain in the record. In short, the defense made no use of that testimony to the appellant's real advantage and, apparently, no such use was contemplated at the moment at which defense counsel ought properly to have moved for his remedy. The conclusion is inescapable that defense counsel permitted Bor's critically damaging direct testimony to stand in the record either because he was not aware that he had a remedy for Bor's refusal to suffer cross-examination in the crucial area or because in the heat of the courtroom battle he simply overlooked it.

■ A military accused at a special or a general court-martial is entitled to be represented by counsel in the criminal proceedings initiated against him.[9] The counsel detailed by the convening authority to fulfill this responsibility must be both a lawyer and certified as competent to perform such duties by his Judge Advocate General.[10] Naturally, then, the right to the assistance of counsel means, inexorably, the *effective* assistance of counsel.[11]

The standard for measuring the presence or absence of the requisite degree of competence in a criminal trial has been as ambiguously stated in this Court's opinions as it has been in those of the United States Supreme Court.[12] However, it has never been questioned that

[m]ere mistakes and errors in judgment of counsel are insufficient to establish a violation of the defendant's constitutional [or statutory] right to effective assistance of counsel. It is only where the mistakes or errors amount to inadequate or inef-

fective assistance of counsel that it can be said that the appellant has been denied his constitutional [or statutory] right of assistance of reasonably competent counsel and one rendering reasonably effective assistance.

*United States v. Hancock*, 49 C.M.R. 830, 832 (A.C.M.R.1975).

■ Nonetheless, neither is it conclusive of effectiveness that the defense counsel obtained an acquittal on one or more of the charged offenses.[13] *United States v. Gaillard*, 49 C.M.R. 471, 473 (A.C.M.R.1974). Indeed, what this Court said in *United States v. Allen*, 8 U.S.C.M.A. 504, 507, 25 C.M.R. 8, 11 (1957), also is applicable here:

No hard and fast rule can be promulgated to test the sufficiency of the discharge of counsel's responsibilities. See *United States v. Hunter*, 2 U.S.C.M.A. 37, 6 C.M.R. 37. Sometimes a single action can be sufficient to show ineffective representation. *United States v. Walker*, 3 U.S.C.M.A. 355, 12 C.M.R. 111. . . .

Courts in several jurisdictions have been faced with the task of evaluating the effectiveness of the representation of counsel for the accused in criminal cases.[14] Thus in *McMann v. Richardson*, 397 U.S. 759, 770–71, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970) (footnote omitted), the Supreme Court held that

[w]hether a plea of guilty is unintelligent and therefore vulnerable when motivated by a confession erroneously thought admissible in evidence depends as an initial matter, not on whether a court would retrospectively consider counsel's advice to be right or wrong, but

---

9. Article 27(a), Uniform Code of Military Justice, 10 U.S.C. § 827(a); *see Middendorf v. Henry*, 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976).

10. Article 27(b)–(c), UCMJ, 10 U.S.C. § 827(b)–(c).

11. *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *Cooper v. Fitzharris*, 551 F.2d 1162, 1164 (9th Cir. 1977); *see United States v. Walker*, 21 U.S.C.M.A. 376, 45 C.M.R. 150 (1972).

12. For an excellent tracing of the development of this standard, both in the Federal system and in the military justice system, *see* Senior Judge Thomas' opinion in *United States v. Zuis*, 49 C.M.R. 150, 155–57 (A.C.M.R.1974).

13. The appellant was acquitted of the sale allegation upon motion of the defense counsel, granted by the military judge, at the close of the Government's case on the ground that the evidence presented by the prosecution was insufficient as a matter of law.

14. *See* Annot., 26 A.L.R. Fed. 218 (1976).

on whether that advice was within the range of competence demanded of attorneys in criminal cases. On the one hand uncertainty is inherent in predicting court decisions; but on the other hand defendants facing felony charges are entitled to the effective assistance of competent counsel. Beyond this . . . the matter . . . should be left to the good sense and discretion of the trial courts with the admonition that if the right to counsel guaranteed by the Constitution is to serve its purpose, defendants cannot be left to the mercies of incompetent counsel . . . . .

The Federal circuits have divided on the standard attorneys must meet to avoid the charge that they rendered ineffective assistance. Some courts adhere to the concept that to be ineffective assistance, counsel's efforts must have been so perfunctory as to have rendered the trial "a farce and mockery of justice." [15] Other courts have specifically rejected the "farce or mockery" test and have adopted their own standards.[16] The Third Circuit has adopted the malpractice standard of "normal competency," [17] which focuses upon the qualitative aspect of representation rather than upon the court-related effects of representation, whereas the Fifth, Sixth and Ninth Circuits have adopted a standard of "counsel reasonably likely to render *and rendering* reasonably effective assistance" as a test of the effective representation by coun-

sel.[18] The test adopted by the Seventh Circuit is "that the Constitution guarantees a criminal defendant legal assistance which meets a minimum standard of professional representation." [19] The District of Columbia Circuit has adopted the standard of "the reasonably competent assistance of *an attorney acting as [a] diligent and conscientious advocate.*" That court, recognizing that " 'reasonably competent assistance' " is only a "shorthand label and not subject to ready application," listed several duties counsel owes to a client, including the concept that "[c]ounsel should be guided by the American Bar Association Standards for the Defense Function. . . ." [20] This Court has impliedly rejected the concept that to be considered ineffective, the attorney's efforts must have been so poor as to have rendered the trial a farce or a mockery. Rather, we have "assume[d] that the accused is entitled to the assistance of an attorney of reasonable competence" [21] and have expressed the expectation that the attorney will " 'exercise . . . the customary skill and knowledge which normally prevails . . .' [22] 'within the range of competence demanded of attorneys in criminal cases.' " [23] We believe that to exercise the skill and knowledge which normally prevails within the range of competence demanded of attorneys in criminal cases requires that the attorney act as a diligent and conscientious advocate on behalf of his client.

---

**15.** *See United States v. Yanishefsky*, 500 F.2d 1327, 1333 (2nd Cir. 1974); cf. *Rickenbacker v. Warden, Auburn Correctional Facility*, 550 F.2d 62 (2nd Cir. 1976).

**16.** *Moore v. United States*, 432 F.2d 730 (3rd Cir. 1970) (*en banc*); *Herring v. Estelle*, 491 F.2d 125 (5th Cir. 1974); *Beasley v. Unitea States*, 491 F.2d 687 (6th Cir. 1974); *United States ex rel. Williams v. Twomey*, 510 F.2d 634 (7th Cir. 1975); *Cooper v. Fitzharris, supra*; *United States v. Decoster*, 159 U.S.App. D.C. 326, 487 F.2d 1197 (1973).

**17.** *Moore v. United States, supra* at 737.

**18.** *See Herring v. Estelle, supra* at 127 (emphasis in original); *Beasley v. United States, supra* at 696; *Cooper v. Fitzharris, supra* at 1166 (footnote omitted).

**19.** *United States ex rel. Williams v. Twomey, supra* at 641.

**20.** *United States v. Decoster, supra* at 331–32, 487 F.2d at 1202–03 (footnotes omitted) (emphasis in original); *see also Benson v. United States*, 552 F.2d 223, 224 (8th Cir. 1977).

**21.** *United States v. Walker, supra* 21 U.S.C. M.A. at 378, 45 C.M.R. at 152.

**22.** *Id., quoting Moore v. United States, supra* at 736.

**23.** *Id., quoting McMann v. Richardson*, 397 U.S. 759, 770–71, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

■ We do not impugn the overall competence of this defense counsel to perform in that role. But a criminal accused is entitled to more than a competent counsel; his right is to one who *exercises* that competence without omission throughout the trial. As Judge Thomas put it in *United States v. Gaillard, supra,* 49 C.M.R. at 475:

We view "effective assistance" of counsel as encompassing both the competence of counsel and the utilization of such competence by the counsel on the behalf of the accused. An accused could have the most competent counsel in the Corps but if the attorney failed to use his best efforts on behalf of his client, it would be of little solace to a convicted and confined client. Conversely, an incompetent attorney may exert superhuman effort on behalf of his accused, but if he does not recognize legal issues, present available defenses, or otherwise is unaware of possible legal objections to evidence, or testimony, his effort seldom will rise to the requisite level of effectiveness required by law.

■ We will not second-guess the strategic or tactical decisions made at trial by defense counsel, but where inaction occurs at a critical point where action is compelled by the situation—where, in other words, defense counsel remains silent where there is no realistic strategic or tactical decision to *make* but to speak up—then the accused has been denied " 'the exercise of the customary skill and knowledge which normally prevails . . .' 'within the range of

competence demanded of attorneys in criminal cases.' " *United States v. Walker,* 21 U.S.C.M.A. 376, 378, 45 C.M.R. 150, 152 (1972).

■ This is the test to be met by every defense counsel practicing within our system of criminal justice, but we believe it was not met at a critical point in the case against this appellant. Therefore, reversal must obtain.

The decision of the United States Navy Court of Military Review is reversed. The findings and sentence are set aside. A rehearing may be ordered.

FLETCHER, Chief Judge (concurring):

■ I agree with Judge Perry that the direct testimony of the witness Bor could have, upon proper motion, been stricken when he exercised his privilege under the Fifth Amendment to the Constitution.

I further believe that the Sixth Amendment in general guarantees the accused's right to cross-examination in criminal proceedings.[1] When this witness took the privilege, the accused was denied this constitutional right.[2] The protection of a constitutional right is the point of demarcation between the adversary system and a trial judge's duty to elicit from a defense counsel his waiver of a right of this dimension.

I would agree that counsel has the primary obligation to make a proper motion, but under the general responsibilities imposed upon the trial judge, that officer can-

1. As the United States Supreme Court stated in *Pointer v. Texas,* 380 U.S. 400, 405, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965):

There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal. *See Smith v. State of Illinois,* 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968); *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968).

2. The Supreme Court has, in fact, condemned for Sixth Amendment reasons such a situation. *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). Although the

viability of *Douglas* to all situations has been the subject of much litigation (*see Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970); *Frazier v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); *compare United States v. Demchak,* 545 F.2d 1029 (5th Cir. 1977) and *United States v. Gould,* 536 F.2d 216 (8th Cir. 1976)), I believe that it is clear that it remains controlling as to the situation presented in this case. Indeed the Supreme Court has maintained that the denial of the right of effective cross-examination is a "constitutional error of the first magnitude," and that "no amount of showing of want of prejudice [will] cure it." *See Davis v. Alaska,* 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974), *quoting* from *Smith v. Illinois,* 390 U.S. 129, 131, 88 S.Ct. 748, 19 L.Ed.2d 934 (1968).

not sit silently.[3]  Where the trial judge does not fulfill his function, I cannot consider the concept of waiver a viable alternative, when the waiver involves matters of constitutional dimension and can only serve to the detriment of one of the parties.

COOK, Judge (dissenting):

■ I agree with the principal opinion that the trial judge committed no error, but I disagree with the conclusion that defense counsel accorded the accused ineffective representation.

I perceive alternative reasons for defense counsel's not moving to compel Bor to answer the two questions in issue or to strike his testimony.  First, I agree with the Court of Military Review that Bor's testimony was useful to the defense.  Two parts of his testimony opposed portions of the testimony given by the major prosecution witness, Daniels.

Daniels testified that Bor was in the barracks' cubicle with him and the accused when the "sale" took place; but Bor stated that Daniels and the accused walked away to another area, and he did not see the accused "hand anything" to Daniels and "really" did not know what had transpired. Further, Daniels testified that the container from which the accused drew the pills that he gave him was a "plastic bag"; Bor maintained that the only container he saw the accused carrying was a "brown plastic bottle with a white cap."  The record allows an inference that defense counsel knew he could counter Bor's refusal to answer the questions, but he elected not to do so either for the alternative reason, which I consider below, or because he wanted to retain Bor's favorable testimony.

Bor was a rebuttal witness.  Before he testified, Huff had testified as a defense witness.  At the end of Huff's testimony, the trial judge had granted a government motion to strike all but a small part of it. However, trial counsel reconsidered and asked that the ruling be vacated so that he could use another part of Huff's testimony. That application was granted.  This incident, I believe, not only apprised defense counsel, if he did not previously know, that a motion to strike is an appropriate remedy for flawed testimony, but more importantly, that the motion should not be used if material advantage could be gained from retention of the testimony.

An alternative reason for defense counsel's action can, I believe, be properly extrapolated from the record; defense counsel could have determined that he had an insufficient factual basis upon which to predicate further inquiry.  The two questions asked Bor were not, I believe, intended to elicit evidence relevant to the offenses but to impeach Bor by acts of misconduct.  The questions were the first of a series on the subject.  After them counsel inquired whether Bor had ever, at Camp LeJeune, transferred, possessed, or sold marihuana, and Bor answered that he had.  Then, counsel asked if Bor had ever transferred or used phencyclidine, the substance that was the subject of the charges against the accused.  Trial counsel objected to this question on the ground that defense counsel had no "reason to believe" Bor had engaged in such misconduct.  A long discussion ensued as to the law on impeachment of a witness by an act of misconduct not followed by conviction.  See Manual for Courts-Martial, United States, 1969 (Revised edition), para-

---

**3.**  ABA Standards, The Function of the Trial Judge, § 1.1 (1972):

> General responsibility of the trial judge. (a) The trial judge has the responsibility for safeguarding both the rights of the accused and the interests of the public in the administration of criminal justice.  The adversary nature of the proceedings does not relieve the trial judge of the obligation of raising on his own initiative, at all appropriate times and in an appropriate manner, matters which may significantly promote a just

> determination of the trial.  The only purpose of a criminal trial is to determine whether the prosecution has established the guilt of the accused as required by law, and the trial judge should not allow the proceedings to be used for any other purpose.

A trial judge's ability and duty to control both the length and scope of examination is recognized and encouraged even in the absence of objection by opposing counsel.  See ABA Standards, The Function of the Trial Judge, § 5.5 and related commentary (1972).

graph 153*b*. When the judge expressed his doubt as to the propriety of the inquiry, defense counsel requested, and was granted, a recess to review his "information." Returning from the recess, counsel withdrew his question. I would infer he did so because he determined he had no factual support for it. I believe it can also fairly be inferred that the withdrawn question covered the same subject as the unanswered questions.

Even without the inference, as a result of the incident, defense counsel had to know the Manual required that he have "possession of facts which support a genuine belief that the witness has committed the offense to which the questioning relates" as a predicate to examining the witness on misconduct that could impeach his credibility. *Id.* at page 27–69. Defense counsel returned to the subject of Bor's dealings with marihuana, but he did not return to the unanswered questions. I believe it can reasonably be inferred that he put aside the unanswered questions because he had determined he possessed an insufficient predicate for them.

I would affirm the decision of the Court of Military Review. At the very least, however, I believe that defense counsel should not be summarily condemned. The Court did not grant accused's petition to consider counsel's conduct, and, I believe the record gives strong indication that counsel may have had good, and legally acceptable, cause to do what he did. Consequently, a hearing on the matter should be held, either by this Court or the Court of Military Review. *United States v. Deadmon*, 3 M.J. 249 (C.M.A. 1977).