UNITED STATES, Appellee,

v.

Sergeant John E. STEPHENS, 583–92–6760, United States Army, Appellant.

CM 443873.

U.S. Army Court of Military Review.

28 Jan. 1986.

For Appellant: Captain Vivian B. Wiesner, JAGC (argued); Colonel William G. Eckhardt, JAGC, Lieutenant Colonel Arthur L. Hunt, JAGC, Major Stephen R. Dooley, JAGC, Major Warren G. Foote, JAGC, Captain Paul J. Moriarty, JAGC (on brief).

For Appellee: Captain James C. Underhill, Jr., JAGC (argued); Colonel James Kucera, JAGC, Lieutenant Colonel John T. Edwards, JAGC, Lieutenant Colonel Joseph A. Rehyansky, JAGC (on brief).

Before WOLD, FELDER, and NAUGHTON, Appellate Military Judges.

## OPINION OF THE COURT

WOLD, Senior Judge:

Pursuant to his pleas, appellant was convicted of eight specifications of sale of hashish in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. Appellant was assigned to a Pershing missile battalion which dealt with long range missile artillery. Five of appellant's sales were of large amounts of hashish (30 to 100 grams) and all sales were to members of appellant's battery. At least one of appellant's customers was retailing the hashish to other soldiers in the battalion. The members of the court-martial sentenced appellant to a dishonorable discharge, total forfeitures, reduction to Private E-1, and confinement for 30 years. Pursuant to a pretrial agreement, the convening authority reduced the confinement portion of the sentence to six years, approving the remainder of the sentence as adjudged.

█ Appellant alleges that he was deprived of the effective assistance of counsel. As to his first ground, failure of counsel to raise the issue of unlawful command influence, we accept counsel's denial of any knowledge of a basis for doing so. As to appellant's other two grounds, failure to challenge an enlisted court member who

was assigned to appellant's battery and failure to present favorable extenuation and mitigation evidence, we find ample room for such decisions within acceptable trial tactics. *See, e.g., United States v. Rivas,* 3 M.J. 282, 289 (C.M.A.1977) ("We will not second-guess the strategic or tactical decisions made at trial by defense counsel, but where inaction occurs at a critical point where action is compelled by the situation ... then the accused has been denied [the effective assistance of counsel].") Counsel might reasonably have thought the member's participation would be helpful to appellant and might reasonably have expected unfavorable rebuttal evidence to outweigh the available extenuation and mitigation evidence. If so, neither a challenge nor the presentation of evidence was "compelled by the situation." To speculate among the numerous possible explanations for counsel's decisions would indeed be second-guessing counsel's trial tactics.[1]

Appellant also asserts that he was prejudiced by unlawful command influence on Staff Sergeant S, a member of the court-martial that imposed his sentence.

In support of his claim, appellant has submitted an affidavit in which he discusses a noncommissioned officer's call held in appellant's battalion approximately six weeks before his trial. Staff Sergeant S attended that meeting. Appellant states that the battalion command sergeant major said at the meeting "that [appellant] had been selling hashish to his subordinates, and that General [S, the brigade commander,] was very upset and had put the word out to sentence [appellant] to nothing less than thirty years[,] forfeiture of all pay and allowances, and reduction to the lowest enlisted grade...."

Appellant has also submitted affidavits from a Sergeant C and a Captain M relating to the same noncommissioned officer's call. Captain M, a local defense counsel, states that a Specialist B told her that at

---

1. In addition to the unlawful command influence issue discussed below, appellant has also alleged several other errors. These have been considered and found to be without merit. We specifically hold that the findings of guilty are unaffected by any error.

the noncommissioned officer's call in question, the battalion command sergeant major had said that "there was an NCO in this battalion who was caught selling drugs to his subordinates," that "the General is upset,"[2] and that "the maximum punishment is 30 years."[3] Sergeant C swears that the sergeant major "stated that any NCO who got caught selling or using drugs should get not less than 30 years in jail, reduced to E–1, and loss of all pay."[4]

Staff Sergeant S, the member in question, has furnished the following affidavit:

[P]rior to [appellant's] trial I had heard rumors through the unit that [appellant] had been apprehended for drugs, however, I did not have any knowledge of specific facts.

... I was present at an NCO call on 13 December 1982. [The battalion command sergeant major] conducted the meeting. In part he announced that [General S] would not tolerate any type of drugs within the unit and that any offenders would be dealt with. I do not remember a discussion of any individuals.

... I served as a court member on approximately 10 cases and do not remember much of any individual case. I remember sitting as a member on *United States vs. Stephens.*

██ "[I]n order to shift the burden of persuasion to the government, appellant must produce or point out evidence which, considering the totality of the circumstances, is sufficient to allow a reasonable person to conclude that actual unlawful command influence affected appellant's case." *United States v. Cruz,* 20 M.J. 873, 886

(A.C.M.R.1985) (en banc). We find the above evidence sufficient to allow a reasonable person to conclude that Sergeant S was told by his battalion command sergeant major to sentence any noncommissioned officer found guilty of appellant's offenses to at least 30 years of confinement. That conclusion, coupled with the presumption that Sergeant S complied with those instructions, *see United States v. Treakle,* 18 M.J. 646, 657 (A.C.M.R.1984) (en banc), *pet. granted,* 20 M.J. 131 (C.M.A. 1985), raises the issue of unlawful command influence as to appellant's sentence. *See Cruz,* 20 M.J. at 888.

In this case, we will order a limited hearing to resolve the command influence issue appellant has raised. At this hearing the government will have the burden of persuading the court that appellant's sentence was not affected by unlawful command influence on Staff Sergeant S, keeping in mind that the presumption that a recipient of unlawful pressure will succumb can be rebutted only by "clear and positive" evidence, *Cruz,* 20 M.J. at 887–888; *Treakle,* 18 M.J. at 657, unless the holding in *United States v. Wood,* 32 C.M.R. 217 (C.M.A. 1962), applies.

The record of trial is returned to The Judge Advocate General for transmission to the same or a different convening authority for a limited hearing before a military judge. The military judge will conduct the hearing to determine whether appellant's sentence was affected by unlawful command influence on Staff Sergeant S. In particular, the military judge will receive evidence and make findings of fact on the following questions:

---

**2.** "The General" to whom Specialist B referred was the commander of the artillery brigade of which appellant's battalion was a part, not the convening authority in this case.

**3.** On their face these are innocent statements. It was surely no news to anyone that a commander would be upset that one of his noncommissioned officers had been selling drugs to subordinates, nor is it unusual to remind soldiers of the maximum punishment for various offenses. Taken in context, however, these remarks could reasonably be interpreted to mean

that the commander wanted the noncommissioned officer in question to be sentenced to 30 years' confinement.

**4.** Appellant has also submitted affidavits from two of his customers, fellow inmates at the United States Disciplinary Barracks, and an affidavit from a noncommissioned officer about a rumor which might or might not have pertained to appellant. The affidavits from appellant's fellow inmates are patently incredible, and rumors are not evidence.

(1) What was the substance of the sergeant major's comments at the 13 December 1982 NCO call?

(2) What was Sergeant S's understanding of the sergeant major's comments? Did he conclude that the sergeant major was recommending a specific sentence, either in appellant's case or for all noncommissioned drug sellers?

(3) Did Sergeant S recall the sergeant major's comments during appellant's trial? If so, did he consider them?

(4) Were the sergeant major's comments discussed during deliberations in appellant's case?

(5) If Sergeant S understood the sergeant major to be recommending a specific sentence, did this have any effect on the adjudged sentence?

If the military judge determines upon completion of this hearing that appellant's sentence was affected by such influence, the record will be returned to the convening authority, who will then set aside the sentence and who may then order a setnence rehearing. If the military judge determines that appellant's sentence was not so affected, the record of trial will be forwarded to this court. If the convening authority determines that an evidentiary hearing is impracticable, he will set aside the sentence and may order a sentence rehearing.

Judge FELDER and Judge NAUGHTON concur.