**UNITED STATES, Appellee,**

v.

**Specialist Wesley P. WHITCOMB, 449–47–1900, United States Army, Appellant.**

**ACMR 9100439.**

U.S. Army Court of Military Review.

27 March 1992.

For Appellant: Captain Michael P. Moran, JAGC, Captain Teresa L. Norris, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Kenneth T. Grant, JAGC (on brief).

Before CREAN, WERNER, and HAGAN, Appellate Military Judges.

## OPINION OF THE COURT

CREAN, Senior Judge:

The appellant, contrary to his pleas, was found guilty by a general court-martial composed of officer members of indecent acts with a child under the age of 16 (two specifications), and taking indecent liberties with a child under the age of 16 (three specifications), in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1982) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for six years, forfeiture of all pay and allowances, and reduction to Private E1.

On 24 August 1990, the appellant committed an indecent act on 13–year–old Lois, by rubbing her breast under her blouse and bra, while Lois was visiting his quarters. Lois did not immediately report the encounter with the appellant. It was only a few months later after she and another student were sent to see the school counselor concerning an argument when this incident came to light. During the counseling session, Lois related the events without mentioning the appellant's name. The counselor continued to question her, obtained the appellant's name from Lois, and notified the authorities. This incident formed the basis of Specification 1 of Charge I.

During a search of the appellant's apartment in relation to the offense with Lois, a roll of undeveloped film was found. The film was developed and showed eight photographs (Pros.Exh. 1–8) of two other girls from the same housing area in various poses. These poses included one photograph of each of the girls lying on the sofa; one of both girls on the couch holding each others arms; one of both girls sitting on a bed with a sheet pulled up to their necks; one of both girls facing backward with their heads between their legs; one of each girl wearing a short fur coat and sitting in a chair; and one with the girls sitting on either side of the appellant on the couch.

The girls, Lisette and Tiffany, testified that in the summer of 1990, the appellant had invited a number of neighborhood children to his apartment to watch movies. They watched one and part of another before leaving to go home to eat. Since they had not finished the second movie, Lisette and Tiffany returned to see the end of the movie. The girls sat on the couch while the appellant sat on the floor. During a funny part of the movie, the appellant put his hand on Lisette's arm and leg and ran his hand from her thigh to her knee. Lisette testified that she did not feel uncomfortable from this touching. This act was the basis of Specification 2 of Additional Charge I.

After finishing the movie, the girls played on the appellant's computer and

then he asked them if they wanted to have their picture taken. The appellant then took the eight photographs mentioned above. While he was taking the photographs, the appellant helped Tiffany take the strap of her bathing suit off her neck and tie it around her back. He also wanted her to put a foxtail fur around her neck. Tiffany did not want to pose with the fox fur so she told the appellant to let Lisette do it. Lisette deliberately broke the foxtail fur because she did not want to wear it. During all of the photographs, the girls were dressed in their tops and shorts and the appellant made no lewd comments or suggestions. Most of the poses were done at the suggestion of the appellant. However, it was Lisette's idea that they wear the fur coat. In all the photographs, the girls were smiling. The taking of the photographs were the basis of Specifications 1 and 2 of Additional Charge II. The appellant's removal of the strap of Tiffany's bathing suit and having her put the foxtail fur around her neck was the basis of Specification 3 of Additional Charge I.

The appellant, through counsel, asserts three assignments of error. First, the evidence is legally and factually insufficient to support the findings of guilty of the indecent acts and indecent liberties offenses involving Lisette and Tiffany. Secondly, Specifications 1 and 2 of Additional Charge II (indecent liberties) are multiplicious for both findings and sentencing purposes. Finally, the civilian defense counsel was ineffective in the representation of the appellant during the sentencing phase of the trial. We hold that, the evidence is both legally and factually sufficient to sustain findings of guilty to Specifications 2 and 3 of Additional Charge I and Specifications 1 and 2 of Additional Charge II. We further hold that Specifications 1 and 2 of Additional Charge II are not multiplicious for findings, but are multiplicious for sentencing. We also hold that his civilian defense counsel did provide effective representation during the sentencing portion of the trial.

## I. SUFFICIENCY OF THE EVIDENCE

■ We first turn to the legal and factual sufficiency of the evidence for the offenses of indecent acts and indecent liberties against Lisette and Tiffany. Evidence is legally sufficient when a reasonable fact-finder, viewing the evidence in the light most favorable to the prosecution, can find all the essential elements of the offense beyond a reasonable doubt. Evidence is factually sufficient when, after weighing the evidence and making allowance for not having personally observed the witnesses, the members of this Court are convinced of the appellant's guilt beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Turner,* 25 M.J. 324 (C.M.A.1987).

■ To convict the appellant of the offense of committing indecent acts, the government had to prove that the appellant committed a certain act or acts upon the body of Lisette as alleged; she was not the spouse of the appellant and was under the age of 16 years; the acts were indecent and were committed with the intent to arouse the appellant's and/or Lisette's sexual desires; and that, under the circumstances, the conduct of the appellant was to the prejudice of good order and discipline in the Army or of a nature to bring discredit on the Army. Manual for Courts–Martial, United States, 1984, Part IV, para. 87b(1) [hereinafter MCM, 1984]. To convict the appellant of the offense of indecent liberties, the government had to prove that the appellant committed a certain act or acts in the presence of Lisette and Tiffany; the girls were not the spouse of the appellant and that they were under the age of 16 years; the acts constituted the taking of indecent liberties; the appellant committed these acts with the intent to arouse his and/or the girls' sexual desires; and that, under the circumstances, his conduct was to the prejudice of good order and discipline in the Army, or was of a nature to bring discredit upon the Army. MCM, 1984, para. 87b(2). "Indecent" is that form of immorality relating to sexual impurity which is not only grossly vulgar, obscene, and repugnant to common propriety, but tends to excite lust and deprave the morals with respect to sexual relations. MCM,

1984, para. 90(c). Some acts are indecent because of their intrinsic character. *United States v. Gaskin*, 31 C.M.R. 5, 7 (C.M.A. 1961). Other acts are indecent because of the circumstances surrounding the act rather than the nature of the act itself. *United States v. Drake*, 26 M.J. 553 (A.C.M.R.1988); *United States v. Blake*, 33 M.J. 923 (A.C.M.R.1991).

█ The evidence is uncontroverted as to the indecent liberties offenses of the appellant taking the pictures of Lisette and Tiffany. The pictures themselves are in evidence. The girls testified as to the method of taking the pictures. They were fully clothed in all of the pictures. Some of the pictures were done at their suggestion, but most were at the suggestion of the appellant. The pictures were never developed, but were found months later undeveloped in the appellant's quarters. During the picture taking session, the appellant wanted Tiffany to move her bathing suit strap from around her neck to her back and wear a foxtail. The appellant started to help her but she told the appellant she wanted Lisette to wear the foxtail. We find that the circumstances surrounding the taking of the pictures and assisting Tiffany in tying her bathing suit strap behind her back make the appellant's actions indecent. The posing of young girls with a fur coat on, or with a sheet drawn up to their necks, or while lying on a couch, or while looking behind them with their heads between their legs is the sexualizing of young girls. The circumstances surrounding, and the actual taking of, such pictures are grossly vulgar, obscene, and repugnant to common propriety. These acts can tend to excite the lust of the individual who poses the girls and takes the pictures.

█ As to the appellant's touching of Lisette while watching the movie, the evidence is again uncontroverted. The appellant touched Lisette's leg, arm, and thigh and moved his hand from her thigh to her knee during a funny part of the movie. Lisette stated that she was not uncomfortable when this happened. The appellant did not say anything nor did he even look at Lisette. Again, we find that, when examining the surrounding circumstances, the appellant's action in touching Lisette as he did was an indecent act.

## II. MULTIPLICITY

█ The appellant asserts that Specifications 1 and 2 of Additional Charge II are multiplicious for both findings and sentencing purposes. Specification 1 is taking indecent liberties with Lisette by taking the pictures of her and Specification 2 is the same act of taking pictures, but with Tiffany.

What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges. Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 307(c)(4) discussion [hereinafter R.C.M.]; *United States v. Harclerode*, 17 M.J. 981, 983 (A.C.M.R. 1984). Four of the eight pictures had the girls posing separately and four had them posing together. The girls were each placed in a specific pose, either individually or together, by the appellant. The appellant's actions were focused on each girl individually and not on them as a pair. One girl posing in a picture was sufficient for appellant's indecent act; there need not have been two girls. Accordingly, since the victims were violated separately, the elements of the offenses are different and not mutually inclusive. This is sufficient to establish that the offenses were not multiplicious for findings. *See United States v. Holt*, 16 M.J. 393 (C.M.A.1983). However, since the two offenses arose from the same incident or transaction, we find that the military judge erred in not ruling that the offenses were multiplicious for sentencing purposes. We will consider this in our assessment of the appropriateness of the sentence.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, the appellant asserts that his civilian trial defense counsel was ineffective during the sentencing portion of the trial because his questioning of a defense witness on direct examination opened the door to damaging cross-examination of the

witness; and his questioning of the same witness in rebuttal revealed that the appellant had received nonjudicial punishment for property offenses.

The appellant, when he was 17 years old, received a civilian juvenile conviction for indecency with a child, resulting in a deferred adjudication under Texas law. During a pretrial hearing, the military judge ruled that the government could not present evidence concerning the conviction, either in its case-in-chief or in the presentencing portion of the trial. In announcing his ruling, the military judge had the following discussion with both counsel:

MJ: Nonetheless, looking at the evidence in a light most favorable to the government, the court's concerned that any probative value is substantially outweighed by the danger of unfair prejudice and the confusion of the issues in this case.

I could let you cross-examine this witness as to try to—to raise a question of his truthfulness, but the danger of resurrecting a ten-year-old-plus conviction in similar offenses such as this is extreme. Now that's not to say that if the—if the defense opens the door, that I'm not going to let you cross-examine on it. And that's not to say that if the defense raises the issue of character for something like law-abidingness [sic], or the witness says something, or the accused says something like, "I've never done anything like this", or, "I wouldn't do that to a little girl", or something like that, that's not to say that at that point I won't permit it.

Nonetheless, my ruling is, that as you present it, general cross-examination to show credibility, I'm not going to let you do that.

During the sentencing portion of the trial, the defense presented evidence by Sergeant First Class (SFC) Smith as follows:

Q. Do you, yourself, have children, Sergeant Smith?

A. Yes, sir, I do.

Q. And would you tell us their ages and sexes?

A. My son is 11, and my daughter is 8.

Q. I told you a few moments ago the charges that the panel found the accused guilty of. Correct?

A. Yes, sir.

Q. And we reviewed the charge sheet on that?

A. Yes, sir.

Q. And you told me that you had the opportunity on another occasion to see the eight photographs of Tiffany and Lisette in the accused's quarters?

A. Yes, sir, at the Article 32 hearing.

Q. Knowing all of that, what he's been found guilty of, knowing the accused, and knowing you have a family, two children, would you personally have any problem with Specialist Whitcomb being alone with your children?

A. No, sir. . . .

A session, held pursuant to Article 39(a), UCMJ, was conducted to determine the extent to which the government could cross-examine SFC Smith on the Texas conviction. Over the objection of the civilian defense counsel who felt he had not opened the door for such questioning, the military judge permitted the government to ask SFC Smith the question, "Had you heard, or are you aware that roughly 11 years ago in the State of Texas the accused was convicted and given a deferred adjudication of that conviction for the offense of indecency with a minor?"[1] The defense counsel did concur with the military judge's determination to instruct the court members that:

MJ: In this regard, the government counsel posed a question to Sergeant First Class Smith, and he did that to test Sergeant First Class Smith's bases for his opinion. Sergeant First Class Smith gave the opinion that he would have no problem with his daughter being around [the appellant]. And that question posed involved an alleged incident in Texas involving a minor. Now in this regard,

---

**1.** The witness stated that he knew about the Texas incident and that it had no bearing on his opinion.

members of the court, that question was proper to test the credibility of that witness. That is all it was proper for. There is no evidence of any incident in Texas, and you're not to consider it for any other purpose than to test the credibility of this witness as to his opinion as to whether he would like to have his daughter around the accused again.

During this same cross-examination of SFC Smith, the government elicited from him that the appellant had received nonjudicial punishment for misappropriation of government property and for bad checks. Although the government had not previously presented any evidence as to prior punishment of the appellant under Article 15, UCMJ, the trial defense counsel did not object to these questions. The defense counsel did elicit from SFC Smith on redirect examination that, he was aware of the circumstances of these Article 15's; they were minor incidents when the appellant was new to the Army and undergoing a divorce; and, they had no bearing on the appellant's duty performance and were not considered to be serious delicts by his superiors.

The civilian trial defense counsel, by affidavit, laid out his trial strategy on this issue as follows:

[T]he fact remains that I did not object to the panel learning how minimalistically the misconduct was viewed by the accused's then chain-of-command. Had I kept this evidence of resolution from the panel while not being able to keep the underlying misconduct from them, they could have misperceived the relative significance of the misconduct.... By allowing the panel to learn of the disposition of the misconduct, I believe that I defused any significant aggravating effect which might otherwise have accrued to the government.

 The standard for measuring claims of ineffectiveness of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This standard has been adopted for courts-martial. *United States v. Scott*, 24 M.J. 186 (C.M.A.1987). Under *Strickland*,

the appellant must first show that his defense counsel's performance was deficient, and second, the deficient performance prejudiced the defense so as to deprive the appellant of a fair trial. "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Scott*, 24 M.J. at 188 (C.M.A.1987). Reviewing courts will not second-guess a counsel's action unless there is no realistic or tactical basis for it. *United States v. Rivas*, 3 M.J. 282 (C.M.A. 1977). The right of the appellant to receive effective assistance of counsel also extends to the sentencing portion of the trial. *United States v. Bono*, 26 M.J. 240 (C.M.A. 1988).

 Although the questioning of SFC Smith by the trial defense counsel legitimately opened the door to cross-examination questions about the appellant's civilian conviction for indecency with a minor, *see United States v. Hallum*, 31 M.J. 254 (C.M.A.1990), this did not amount to inadequate advocacy. Clearly, there was a tactical reason for the question since SFC Smith admitted he would trust the appellant with his children notwithstanding his record of indecency with children. Moreover, assuming, *arguendo*, that the trial defense counsel may have made a mistake in pursuing the line of questioning, this does not equate to ineffective representation under *Strickland*, *Scott*, and *Rivas*. Furthermore, we find that the appellant was not prejudiced as the military judge rendered a limiting instruction.

 Likewise, as to the testimony on the Article 15, the trial defense counsel had a tactical reason for not objecting to the questioning about the Article 15, and for questioning SFC Smith as he did. Applying the test of *Strickland* and *Scott*, we find that the civilian trial defense counsel was not ineffective. The trial defense counsel's affidavit sets forth sound reasons under the circumstances of the case to justify his actions.

The remaining assertions of error, to include those raised personally by the appellant, pursuant to *United States v. Groste-*

*fon,* 12 M.J. 431 (C.M.A.1982), are without merit.

The findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted, the entire record, and *United States v. Sales,* 22 M.J. 305 (C.M.A. 1986), the sentence is affirmed.

Judge WERNER and Judge HAGAN concur.