**UNITED STATES**

v.

**Sergeant John L. WHITE, Jr., FR 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, 2030th Communications Squadron, Eighth Air Force (SAC).**

**ACM 22258.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 18 May 1977.

Decided 8 Nov. 1977.

Appellate Counsel for the Accused: Colonel Robert W. Norris and Captain Thomas S. Markiewicz.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Major Alvin E. Schlechter.

Before EARLY, ORSER and ARRO-WOOD, Appellate Military Judges.

## DECISION

ORSER, Judge:

At his trial by general court-martial the accused was convicted, despite pleas of not guilty, of transferring heroin on two occasions, in violation of Article 134 of the Uniform Code of Military Justice, 10 U.S.C. § 934. The approved sentence is a bad conduct discharge, confinement at hard labor for four years, forfeiture of all pay and allowances and reduction to the grade of airman basic.

On appeal, seven errors are assigned by the accused and appellate defense counsel. As the record shows the heroin transactions were consummated away from Wurtsmith Air Force Base, in the nearby civilian community of Oscoda, Michigan, we will initially consider the accused's assertion that the court-martial improperly exercised jurisdiction over the offenses.

### I.

■ In the now familiar case of *United States v. McCarthy*, 54 C.M.R. 30, 2 M.J. 26 (1976), the United States Court of Military Appeals, calling upon the language of *Schlesinger v. Councilman*, 420 U.S. 738, 760, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975), declared that even where off-base offenses involve drugs, a military tribunal is not empowered to exercise jurisdiction absent a factually supported finding that the military interest in deterring the offenses is distinct from and greater than that of civilian society, and that the distinct military interest cannot be adequately vindicated in the civilian courts. As the Court declared in *McCarthy*, and has since reiterated, resolution of service connection issues necessitates a detailed, thorough analysis, on a case-by-case, offense-by-offense basis, in terms of the twelve criteria set forth in *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971). *United States v. Alef*, 54 C.M.R. 1, 3 M.J. 414 (C.M.A.1977); *United States v. Hedlund*, 2 M.J. 11 (1976); *United States v. Moore*, 52 C.M.R. 4, 1 M.J. 448 (1976).

The instant record reflects that prior to the commission of the offenses the Wurtsmith Air Force Base Office of Special Investigations (OSI) and the Sheriff's Office of Iosco County, Michigan, were jointly engaged in a criminal investigation focused on two suspected narcotics dealers, one of whom was the accused. An Airman Weate volunteered to act as an undercover informer in the operation. In due course, the investigators arranged a controlled purchase of heroin from the accused utilizing Weate as the nominal buyer.

Pursuant to the plan, Weate, from his duty location on Wurtsmith AFB, telephoned the accused at his duty section on the base and solicited a gram of heroin. The accused, who knew Weate to be a fellow airman, agreed to supply the drug. Later that same day, the two rendezvoused at the accused's duty section, and Weate furnished the accused $65.00 in OSI marked money to finance the purchase. It was agreed that the accused would deliver the heroin in a couple of days. Two days later, Weate, in the company of an incognito detective of the Sheriff's Office named Chambers, proceeded to the accused's off-base apartment. There, the accused gave Weate an aluminum foil wrapped package containing what was subsequently determined to be .596 gram of heroin.

Less than two weeks thereafter, Weate again telephoned the accused while the latter was at his duty section on base, and asked if he could obtain a second batch of heroin. On this occasion, the accused agreed to obtain the drug for Weate for the sum of $70.00. The bargain called for Weate to furnish the money to the accused at the accused's duty section. Weate went to the accused's duty section but could not find him. He finally "tracked him down" and delivered the money at a third individual's off-base quarters.

In the same manner as the initial transaction, the accused subsequently delivered an aluminum foil wrapped package to Weate and Detective Chambers at the accused's off-base apartment. Laboratory analysis

disclosed that the package consisted of .263 gram of heroin.

Upon consideration of essentially the foregoing circumstances, the military judge made special findings of fact in support of his determination that the offenses were service connected. In terms of the criteria enunciated by the Supreme Court in *Relford v. Commandant,* he specifically found that:

The commission of the offenses charged involves a flouting of military authority. The transfer of heroin within a civilian community of Oscoda, Michigan, a small town approximately two miles from Wurtsmith Air Force Base in an isolated area of Michigan constitutes a threat to the health and welfare of military personnel of Wurtsmith Air Force Base.

Having carefully examined all relevant circumstances in terms of the *Relford* criteria, we concur with the military judge's conclusion of service connection. Moreover, in addition to, yet interrelated with, the flouting of military authority and the threat to military personnel (and hence the military installation) found by the military judge, the evidence demonstrates the presence of a third factor weighing in favor of service connection: the on-base formulation of the criminal intent. *United States v. McCarthy,* supra. On both occasions, the bargaining for the heroin was done on base and involved government facilities and government time. Although in each instance the climactic act of transfer occurred in the civilian community, on the basis of the military community, military property, military time activity that preceded and was a vital ingredient of each transfer, the offenses cannot rationally be considered to have occurred while the parties were blended into the general civilian populace. *United States v. McCarthy,* supra.

We readily conclude that the military community had the paramount, if not sole, interest in prosecuting both heroin transfer offenses. See *Peterson v. Goodwin,* 512 F.2d 479 (5th Cir. 1975), cert. denied, 423 U.S. 931, 96 S.Ct. 282, 46 L.Ed.2d 260 (1976).

The circumstances demonstrate a distinct military interest in the offenses that could not be adequately vindicated in the civilian community. *Schlesinger v. Councilman,* supra.

## II.

■ In the next matter we address, appellate defense counsel contend that the accused received ineffective assistance of counsel when the defense counsel failed to move to strike the direct testimony of prosecution witness Weate after he invoked his privilege against self-incrimination. In the instant context we disagree.

Following his direct testimony concerning the facts recited in connection with our discussion of the jurisdictional issue, Weate was cross-examined by the accused's counsel. After brief questions designed to indicate weaknesses in Weate's memory concerning the offenses, and to show that the witness had been punished nonjudicially [1] for larceny of the synthetic drugs hydromorphone and demerol from the base hospital over one year before the date of the offenses charged against the accused, the defense attorney continued his attack on Weate's credibility by attempting to elicit further concessions of drug involvement. As demonstrated by the following questions and answers in the record of trial, the accused's counsel was thwarted in his efforts:

Q: Have you ever used narcotics?

A: I will stand on my Article 31 rights in regard to that question.

Q: I'm sorry? Would you repeat that?

A: I'll stand on my Article 31 rights in response to that question.

Q: You're invoking your Article 31 rights?

A: Yes.

Q: You refuse to answer the question?

A: Yes, sir.

Q: Now, these drugs you took from the hospital, what did you do with them?

A: I beg your pardon.

Q: The drugs you took from the hospital,—

---

1. Article 15, Uniform Code of Military Justice, 10 U.S.C. § 815.

TC: Your Honor, I'm going to object, this is getting a little far afield from the case at this point.

MJ: I'll only pursue it if the accused (sic) want to answer it.

DC: Do you want to invoke your Article 31 rights again?

Wit: Yes, Sir.

The defense attorney thereupon ceased his cross-examination of the witness. As noted by appellate defense counsel, the accused's counsel made no motion to strike the direct testimony of Weate, *United States v. Colon-Atienza,* 22 U.S.C.M.A. 399, 47 C.M.R. 336 (1973), nor did the military judge, *sua sponte,* direct that the testimony be stricken from the record and disregarded by the court members. See ABA Standards, The function of the Trial Judge, § 1.1 (1972).

In its most recent decision dealing with the problem of an important adverse witness invoking his Article 31—Fifth Amendment[2] privilege against self-incrimination, thereby frustrating the defense endeavor to impeach his credibility, the Court of Military Appeals observed:

As a general proposition, when a witness refuses to answer questions on cross-examination, "the opportunity of this probing and testing his statements [made on direct examination] has substantially failed, and his direct testimony should be struck out." 5 Wigmore, Evidence § 1391 (Chadbourn rev. 1974) . . . . This is because the right to confront an adverse witness, found in the Sixth Amendment of the Constitution of the United States, includes the right to cross-examine that witness. And as long as the subject matter of the cross-examination is germane to the direct examination or relates to the witness' credibility, cross-examination may extend to areas of self-incrimination. Of course, the witness may properly decline to answer such questions, instead invoking his right not to incriminate himself. In such circumstance, the accused's usual remedy for this denial of his right to confront an adverse witness is to have that witness' direct testimony stricken from the record.

*United States v. Rivas,* 3 M.J. 282, 285 (C.M.A.1977) (footnotes omitted).

However, in the case at hand, as in *Rivas,* the defense counsel chose not to petition the military judge for the "usual remedy" of expunging the witness' testimony from the record and the memory of the court members. And here, as there, the counsel made no motions or objections whatever in the face of the witness' refusal to answer his questions on cross-examination.

In *Rivas,* the Court rejected an appellate claim that in the interests of insuring the basic fairness of the proceedings the military judge had a *sua sponte* duty to strike the direct testimony of the witness. Although appellate defense counsel lodge no similar claim here, the facts closely parallel those in *Rivas,* and the Court's reasoning is clearly apropos. After iterating the general proposition that the trial judge bears the primary responsibility for insuring that only admissible evidence is presented at trial (See *United States v. Morales,* 23 U.S.C.M.A. 508, 50 C.M.R. 647, 1 M.J. 87 (1975); *United States v. Heflin,* 23 U.S.C.M.A. 505, 50 C.M.R. 644, 1 M.J. 131 (1975)), the Court drew the important distinction that where (as in that case, and as equally true in the case at hand) there is nothing *inadmissible* about the witness' direct testimony, the military judge has no duty, in the interests of preserving the basic fairness of the proceeding, to strike the otherwise admissible testimony absent a motion to strike by the defense.

The Court then turned its attention to the conduct of the defense counsel in the face of the witness' refusal to answer his questions. Being unable to discern any possible tactical advantage the accused may have gained from the unchallenged direct testimony, Judge Perry, speaking for the Court, felt compelled to conclude that the defense counsel's failure to request relief was occasioned either by ignorance of the remedy or neglect. After noting that the

---

**2.** Article 31, Code, supra; U.S.Const. Amend. V.

federal judicial circuits are divided on the standard attorneys must meet to avoid a charge of ineffective assistance, the Court in the following language, enunciated the test to be applied in the military criminal justice system:

We will not second-guess the strategic or tactical decisions made at trial by defense counsel, but where inaction occurs at a critical point where action is compelled by the situation—where, in other words, defense counsel remains silent where there is no realistic strategic or tactical decision to *make* but to speak up—then the accused has been denied " 'the exercise of the customary skill and knowledge which normally prevails . . ' 'within the range of competence demanded of attorneys in criminal cases.' " *United States v. Walker,* 21 U.S.C.M.A. 376, 378, 45 C.M.R. 150, 152 (1972).

*United States v. Rivas,* supra, at page 289. Finding that the defense counsel had failed that test at a critical point in the proceeding, the Court reversed the accused's conviction.

Like the Court in *Rivas,* we are unable to discern any possible advantage which may have inured to the defense by their failure to challenge witness Weate's direct testimony. In spite of the indicated similarities, however, we are in accord with the argument of appellate government counsel that the instant case is factually distinguishable from *Rivas,* and consequently, the opposite result is warranted.

As the government's advocates correctly note, in *Rivas,* the subject matter of inquiry which evoked the witness' claim of privilege involved the specific charged offense. Here, by marked contrast, the defense counsel's questions related only to general credibility matters. Neither the question concerning the witness' personal use of narcotics, nor that dealing with the disposition of the drugs he admitted taking from the hospital over a year before the charged offenses, had a direct bearing on the accused's guilt.

As argued by appellate government counsel, Courts representing several federal circuits have held that where the cross-examination extends to matters which are merely collateral to a witness' testimony implicating the accused in charged offenses, the defense is not entitled to have the direct testimony stricken from the record.[3] The reasoning by the Court in one of the cited cases, *United States v. Norman,* 402 F.2d 73 (9th Cir. 1968), cert. denied, 397 U.S. 398, 90 S.Ct. 949, 25 L.Ed.2d 119 (1970), is particularly pertinent. If, by his questions, the defense attorney was trying to gain a concession from the witness that he had his own source for the heroin he testified the accused transferred, such an answer would not have appreciably weakened the government's case. The evidence showed the witness was searched before and after the transfers and that the transactions were closely monitored by government operatives. Thus, as the Court reasoned in *Norman,* even if the witness had his own supply of heroin, there is no reasonable possibility he had access to it at the time of the charged offenses.

---

3. *United States v. LaRiche et al.,* 549 F.2d 1088 (6th Cir. 1977), cert. denied, 430 U.S. 987, 97 S.Ct. 1687, 52 L.Ed.2d 383 (1977); *United States v. DiGiovanni,* 544 F.2d 642 (2d Cir. 1976); *United States v. Gould,* 536 F.2d 216 (8th Cir. 1976); *United States v. Norman,* 402 F.2d 73 (9th Cir. 1968), cert. denied, 397 U.S. 938, 90 S.Ct. 949, 25 L.Ed.2d 119 (1970); *United States v. Cardillo,* 316 F.2d 606 (2d Cir. 1963), cert. denied, *Margolis v. United States,* 375 U.S. 822, 84 S.Ct. 60, 11 L.Ed.2d 55 (1963); also in accord, *United States v. McFarland,* 371 F.2d 701 (2nd Cir. 1966), cert. denied, 387 U.S. 906, 87 S.Ct. 1689, 18 L.Ed.2d 624 (1967); *Hett v. United States,* 353 F.2d 761 (9th Cir. 1966), cert. denied, 384 U.S. 905, 86 S.Ct. 1339, 16 L.Ed.2d 358 (1966). In the *LaRiche* case (at page 1096) the Court stated:

When a prosecution witness refuses to submit to cross-examination, it *may be* necessary for the trial court to strike all or part of the testimony. [Citation omitted.] A defendant's rights do not bar the admission of the witness's testimony against him where the questions concern subject matter which is either collateral or cumulative and where the cross-examination is directed at the witness' general credibility *rather than* toward matters relating to the specific events of the crime charged. See *United States v. Garrett,* 542 F.2d 23, 26 (6th Cir. 1976).

(Emphasis ours.)

To relate the holdings of the cited federal decisions to the issue at hand, since Weate's direct testimony was not expungable, a defense motion to strike would not have entitled the accused to relief. Therefore, in terms of the *Rivas* case, we decline to condemn the defense counsel's failure to make such effort as "inaction . . . at a critical point where action [was] compelled." *United States v. Rivas,* supra, at page 289.

Even assuming for purposes of this discussion that witness Weate's direct testimony would have been stricken by the military judge upon application by the defense counsel, we would still be convinced that his failure to make the appropriate motion was not, in the present circumstances, an omission of competent representation. In the *Rivas* case, the credibility of the unchallenged witness was judged by the Court as crucial to the fortunes of the litigants. Here, by contrast, while witness Weate's testimony was by no means unimportant, from the perspective of the evidence as a whole, the case by no means turned on a close question of his credibility.

Weate's testimony was thoroughly corroborated by the testimony of the civilian police detective Chambers, Weate's partner in both heroin transactions. More significantly though, for purposes of this exercise, Chambers' testimony is sufficient on its independent merits to establish the vital particulars of the drug transfer offenses. Chambers was actively involved in the planning and execution phases of the crimes. On each occasion, he personally observed the actual transfer of the heroin by the accused to Weate. His testimony is straightforward, clear, convincing, and unshaken in any appreciable degree by the defense. Of additional pertinence, the defense presented no evidence whatever on the merits to counter the government's compelling demonstration of guilt. The overwhelming evidence of the accused's guilt convinces us, beyond reasonable doubt, that the defense counsel's failure to challenge Weate's direct testimony was not a contributing factor in the accused's conviction. See *United States v. Ward,* 23 U.S.C.M.A. 572, 50 C.M.R. 837, 1 M.J. 176 (1975).

For the foregoing reasons, we are satisfied that the defense counsel, without omission, exercised the "customary skill and knowledge which normally prevails . . within the range of competence demanded of attorneys in criminal cases." *United States v. Rivas,* supra, at page 289. The assignment of error is accordingly without merit.

### III.

■ In the final issue meriting extended discussion, appellate defense counsel assert that the military judge erred by permitting the government to present testimony in aggravation after findings. The error was compounded, say counsel, when, in his sentencing instructions, the military judge alluded to such testimony as a matter aggravating the offenses.

During the sentencing portion of the trial, the prosecution recalled Detective Chambers to the witness stand. Over defense objection,[4] the detective was permitted to testify that on the basis of its weight and quantum of pure heroin solution, the heroin transferred by the accused was capable of being apportioned into 37 to 42 normal street doses.

In his subsequent argument for a severe punishment, the trial counsel asked the court members to consider Detective Chambers' testimony concerning the number of potential "hits" contained in the heroin transferred by the accused. In his sentencing instructions to the members, the military judge added formal emphasis to the detective's testimony by citing the possible number of "hits" in the heroin as a matter in aggravation which could be evaluated

4. Although an argument is made in the review of the staff judge advocate that any error was waived because the defense attorney failed to enunciate the proper grounds for his objection, we believe it would be improper to sanction the error herein discussed on such basis. See *United States v. Morales,* 23 U.S.C.M.A. 508, 50 C.M.R. 647, 1 M.J. 87 (1975); *United States v. Heflin,* 23 U.S.C.M.A. 505, 50 C.M.R. 644, 1 M.J. 131 (1975).

"as militating against or partially lessening the favorable aspects of the evidence presented on behalf of the accused." See *United States v. Wheeler,* 17 U.S.C.M.A. 274, 38 C.M.R. 72 (1967).

We agree with appellate defense counsel that the foregoing evidence constituted matter in aggravation of the offenses. We further agree that the military judge erred in permitting the evidence before the court and compounded the error by his instructional reference to it.

Paragraph 75*b*(3) of the Manual for Courts-Martial, 1969 (Rev), provides:

> *Matters showing aggravation of an offense to which a plea of guilty has been entered.* If a finding of guilty of an offense is based upon a plea of guilty and available and admissible evidence as to any aggravating circumstances was not introduced before the findings, the prosecution may introduce that evidence after the findings are announced.

See also Air Force Manual 111–1, Military Justice Guide, paragraph 4–10, 2 July 1973. The obverse implication of the *Manual* procedural provision is that the prosecution is not privileged after findings to introduce evidence showing aggravation of offenses to which an accused pleaded not guilty.

Here, as indicated at the outset of this decision, the accused pleaded not guilty to both offenses and put the government to the burden of proving his guilt. Thus, the testimony of Detective Chambers, which had no logical function except to increase the seriousness of the offenses in the minds of the court members, was not admissible. Of course the evidence would have been admissible had it been offered in proper rebuttal to evidence in extenuation of the offenses presented on the accused's behalf. See Manual for Courts-Martial, supra, paragraphs 75*c*(3) and 75*e*; *United States v. Hamilton,* 20 U.S.C.M.A. 91, 42 C.M.R. 283 (1970); *United States v. Plante,* 13 U.S.C.M.A. 266, 32 C.M.R. 266 (1962); *United States v. Spence,* 3 M.J. 831 (A.F.C.M.R.

1977). However, in this case the defense presented no evidence prior to sentencing which provided the government a legitimate opening for the rebuttal testimony of Detective Chambers. Such testimony was accordingly improperly considered by the court members during their sentencing deliberations. *United States v. Billingsley,* 20 C.M.R. 917 (A.F.B.R.1955); see *United States v. Bruneau,* 12 C.M.R. 718 (A.F.B.R. 1953).

In consequence of this error, appellate defense counsel maintain that a sentence rehearing is mandated. In many instances the remedy sought by the defense may indeed be the only appropriate means of assuring fair treatment to the accused. See *United States v. Timberlake,* 22 U.S.C.M.A. 117, 46 C.M.R. 117 (1973). In this case, however, even absent Detective Chamber's definitive assessment of total street doses contained in the heroin transferred, the court members by the exercise of their own judgment, common sense, and presumed knowledge of the ways of the world, would surely have surmised that the heroin transferred was divisible into a number of portions. Furthermore, the fact that the drug involved was heroin, rather than other drugs generally considered less deleterious to health, was itself an inherently aggravating circumstance. The court members were instructed that the maximum imposable punishment included confinement at hard labor for 20 years and a dishonorable discharge. Although the accused appeared before the court with a virtually unblemished past record of conduct, he stood convicted of serious offenses involving a severe potential threat to the military community. For the foregoing reasons, we conclude that the harmful effect of the inadmissible evidence can be effectively removed by meaningful reassessment of the sentence.

We have carefully considered the remaining assertions of error and find them to be without merit.[5] Having reassessed the

---

5. Our recent decision of *United States v. Hoesing,* 3 M.J. 1058 (A.F.C.M.R.1977), is dispositive of an appellate defense assertion that the accused was denied due process and equal protection of the law by being sentenced under the sanctions for violation of Article 134, Code, supra, rather than Article 92.

punishment on the basis of the sentencing error discussed, we find appropriate only so much thereof as provides for a bad conduct discharge, confinement at hard labor for three years, forfeiture of all pay and allowances, and reduction to the grade of airman basic. The findings of guilty and the sentence, as modified, are

AFFIRMED.

EARLY, Chief Judge, and ARROWOOD, Judge, concur.