**UNITED STATES**

v.

**Jerome M. VICKERS, 348 62 0852, Private First Class (E–2) U. S. Marine Corps.**

**NCM 80 2901.**

U. S. Navy Court of Military Review.

Sentence Adjudged 25 June 1980.

Decided 20 Feb. 1981.

LCDR Peter B. Haskel, JAGC, USN, Appellate Defense Counsel.

CAPT Charles Wm. Dorman, USMC, Appellate Government Counsel.

Before CEDARBURG, SANDERS and BOHLEN, JJ.

CEDARBURG, Chief Judge:

Appellant asserts two interrelated assignments of error:

## I

THE STAFF JUDGE ADVOCATE'S POST-TRIAL REVIEW PROVIDED IMPROPER STANDARDS FOR REASSESSING THE SENTENCE TO PURGE TRIAL ERROR, AND WAS OTHERWISE MISLEADING.

## II

THE CONVENING [sic] AUTHORITY DID NOT MEANINGFULLY REASSESS THE SENTENCE BASED ON PROPER STANDARDS.

At his special court-martial, appellant was convicted, contrary to his pleas, of one specification alleging willful disobedience of a lawful command from a known superior commissioned officer, a violation of Article 90, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 890; two specifications, each alleging the assault, by unlawful striking, of another Marine, violations of Article 128, UCMJ, 10 U.S.C. § 928; one specification by exceptions and substitutions, of using provoking words toward another Marine, a violation of Article 117, UCMJ, 10 U.S.C. § 917; and, under an Additional Charge, one specification, by exceptions and substitutions, alleging the wrongful communication of a threat to injure a fellow Marine, a violation of Article 134, UCMJ, 10 U.S.C. § 934.

Pertinent to the willful disobedience offense specified under Charge I, First Lieutenant C testified during the government's case-in-chief that he was the officer of the day at the time of the alleged incident. Called to investigate a disturbance, he discovered a young Marine holding an entrenching tool. The young Marine was with several other Marines, including the accused, and was surrounded by a circle of guards. First Lieutenant C ordered the accused "to get out of the area and quit interfering with what I [am] trying to do." (R.16). Appellant was only two or three feet from the witness when the order was given and apparently in response stated, while looking at First Lieutenant C, "Sir, I'm only trying to help." (R.17). The witness then related that the accused never did

clear the area. Further examination revealed that appellant was told a number of different times in other terms to leave the area, that the witness was too involved with the Marine holding the entrenching tool to pursue the issue of the accused, but that the accused probably meant to assist the witness with disarming the young Marine. The military judge sitting alone found appellant guilty of disobeying the order to "get out of" instead of "clear" the area as was originally charged.

During the presentation of presentencing evidence, the government recalled First Lieutenant C to the stand, without defense objection, for the purpose of showing the aggravating circumstances of appellant's offense. First Lieutenant C recounted that he never did get control of the incident and that one of the reasons he never got control was appellant's continued presence. The incident, the witness related, continued for half-an-hour to 45 minutes, moving into different areas of the Camp; during that period the accused was one of three other Marines who travelled with the dispute. Although appellant never physically interfered with the witness' pursuit of the young Marine, in his opinion appellant's presence served to keep the young Marine excited, or agitated.

The government offered nothing further in aggravation; the defense presented in extenuation and mitigation only appellant's short unsworn oral statement that he desired to fulfill his three-year commitment to serve his country, that he had learned a lot from the time he had already spent in the brig, and that he wanted to return to duty as soon as possible. After arguments the military judge sentenced appellant to a bad-conduct discharge, confinement at hard labor for 3 months, forfeiture of $290.00 pay per month for 3 months, and reduction in rate to pay grade E–1. The convening authority approved the sentence awarded.

The staff judge advocate, in his review for the supervisory authority, opined that,

Paragraphs 70 and 75b(3), *Manual for Courts-Martial*, 1969 (Rev.), make provision only in guilty plea cases for the

prosecution to offer matters in aggravation of an offense post-findings, not in rebuttal. The *Manual* does not expressly prohibit the practice in contested cases, but a prohibition may fairly be implied from the language and from logic. *U. S. v. TALIAFERRO*, 2 M.J. 397 (A.C.M.R. 1975). As a result, the Military Judge erred in allowing the Government to present Lieutenant [C's] testimony in aggravation. Despite a lack of Defense objection, it is my opinion that the harmful effect of the inadmissible [sic] evidence can be effectively removed by reassessment of the sentence. *U. S. v. MORALES*, 1 M.J. 87 (C.M.A.1975), *U. S. v. WHITE*, 4 M.J. [628] 629 (A.F.C.M.R. 1977).

SJAR at 14. The reviewer, therefore, later recommended to the supervisory authority that the "sentence should be reassessed due to the error discussed in paragraph 2B(2). Upon reassessment, the sentence, as approved by the Convening Authority, should be approved." SJAR at 17.

Appellant now complains that although the staff judge advocate correctly determined that First Lieutenant C's testimony during presentencing was inadmissible evidence, the supervisory authority was incorrectly advised of the standard to be used for reassessment inasmuch as appellant was awarded a bad-conduct discharge. The correct standard, it is asserted, was announced in *United States v. Dukes*, 5 M.J. 71 (C.M.A. 1978), in which the Court of Military Appeals created a "fair risk of prejudice" test. It is conceded in the appellate defense brief that the trial defense counsel's response prepared pursuant to *United States v. Goode*, 1 M.J. 3 (C.M.A.1975), properly articulated the correct legal standard for sentence reassessment, but it is implied in the same brief that the staff judge advocate's response, which "restate[d] in even more definite terms his own, incorrect, standard for sentence reassessment," compounded the purported misadvice. It is also advanced that the staff judge advocate's phraseology improperly implied that since he had already reassessed the sentence

there was no need for the supervisory authority to do so himself.

■ We do not believe that it is necessary to discuss either of appellant's specific assignments of error because we believe reassessment was unnecessary in the first place. The staff judge advocate, in his advice, determined that pursuant to paragraphs 70 and 75*b*(3), *Manual for Courts-Martial, 1969 (Rev.)* (MCM), and *United States v. Taliaferro*, 2 M.J. 397 (A.C.M.R. 1975), First Lieutenant C's testimony in aggravation was inadmissible evidence. We conclude the staff judge advocate read the holding of *Taliaferro* too broadly in determining that the circumstances of the particular offense of which appellant had been found guilty could not be received as evidence in determining an appropriate sentence.

In *Taliaferro*, evidence of two forged checks which had not been charged as offenses was introduced in aggravation after the accused was found guilty, contrary to his pleas, of nine specifications of making checks with knowledge of insufficient funds and of two specifications alleging forgery of checks. The additional checks had been found in a search during which the checks that were the subject of the 11 separate charged offenses were uncovered. The additional checks did not, however, relate to the circumstances of any of the particular offenses of which that accused had been found guilty. Perhaps the staff judge advocate's reading of the holding in *Taliaferro* and of the underlying *Manual* provisions was too expansive because the issue specifically posed in the body of the *Taliaferro* opinion was not closely defined by the facts of record and was framed considerably broader than the actual holding rendered, or of the holding in *United States v. Peace*, 49 C.M.R. 172, 173 (A.C.M.R.1974) (finding inadmissible evidence in aggravation which did not go to the particular offense of which an accused had been convicted but concerning general denigrations of the accused or other unrelated incidents), relied upon as authority in *Taliaferro*. Even the genesis case of this proposition, *United States v. Allen*, 21 C.M.R. 609 (C.G.B.R. 1956), suffers from this factual distinction; there the government introduced testimony as to Allen's desire for a bad-conduct discharge, which could in no manner be interpreted as an explanation of the circumstances surrounding the offense for which he was standing trial.

■ The above interpretations notwithstanding, we do not ascribe an intent of the drafters of the *Manual* to preclude, by paragraphs 70 and 75*b*(3), the use in aggravation of relevant matters relating to the particular offense of which an accused stands convicted when the accused has pleaded "not guilty" but is found "guilty". We do not believe that the "obverse implication [of paragraph 75*b*(3)] of the *Manual* . . . is that the prosecution is not privileged after findings to introduce evidence showing aggravation of offenses to which an accused pleaded not guilty." *United States v. White*, 4 M.J. 628, 634 (A.F.C.M.R.1977), *aff'd on other grounds*, 6 M.J. 12 (C.M.A. 1978) (summary disposition). Instead, such testimony in aggravation as was presented in the case before us is clearly relevant and admissible as "appropriate matter to aid the court in determining the kind and amount of punishment to be imposed." Paragraph 75*a*, MCM; *United States v. Corl*, 6 M.J. 914, 916 (N.C.M.R.1979), *aff'd*; 8 M.J. 47 (C.M.A.1979) (summary disposition of issue certified for review). To hold otherwise would be to preclude by a general rule the introduction of such evidence which could very well be irrelevant or prejudicial on the merits of a specific case but highly relevant for sentencing purposes. *See United States v. Corl, supra*. As was said just recently, a "military judge must be provided relevant material concerning the accused" at presentencing to ensure "the tailoring of a sentence to fit the crime and the offender." *United States v. Shelwood*, 10 M.J. 755 (N.C.M.R.1981). *See generally United States v. Mack*, 9 M.J. 300, 316 (C.M.A. 1980).

■ First Lieutenant C's testimony was highly relevant for presentencing purposes since it provided the military judge with a

full explanation of the aggravating surrounding circumstances of appellant's offense. The evidence was therefore admissible. The error we can find in this record of trial, that of the staff judge advocate's misinterpretation of the law, could have only worked to appellant's advantage; his sentence was reassessed when in fact no reassessment was necessary. We are unable to perceive any possible prejudice appellant may have suffered as a result of this reassessment, whether or not the standard used was erroneous.

Accordingly, the findings and sentence as approved on review below are affirmed.

Judge SANDERS and Judge BOHLEN concur.